IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY JACKSON, | No. 4:24-CV-01275 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KWU CO., *et al.*, | |
| Defendant. | |

MEMORANDUM OPINION

SEPTEMBER 24, 2024

Currently pending before the Court is a Motion to Dismiss by Defendants, KWU Co. ("KWU") and Barry Glen Taylor ("Taylor"). For the reasons below, the Motion is denied.

## I.   BACKGROUND

Plaintiff, Jeremy Jackson ("Jackson"), alleges that KWU and its owner, Taylor, are responsible for at least eight "unsolicited telemarketing calls" he received on his personal cell phone in early 2024.[1] According to Jackson, the calls entailed a pre-recorded message advertising various pharmaceuticals for sale.[2] Jackson was unable to return any of the telemarketing calls, which, paired with the pre-recorded voice, led him to believe that they were made using an Automated

---

[1]   Doc. 1-1 ¶ 14.
[2]   *Id.* ¶¶ 15, 17.

Telephone Dialing System and caller ID spoofing.[3] To determine who was behind the calls, Jackson purchased some of the advertised pharmaceuticals for $140 and was apparently charged by KWU.[4] Jackson argues that these calls and their contents violated the Federal Telephone Consumer Protection Act ("TCPA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[5]

In June 2024, Jackson sued KWU and Taylor in the Court of Common Pleas of Centre County.[6] Defendants removed the case to this Court and moved to dismiss. They argue that Jackson lacks standing because he intentionally purchased the advertised products to create the basis for this suit, an act motivated by his work as an attorney who litigates TCPA claims.[7] They also contend that dismissal is necessary because Jackson failed to name the supposed true caller, Walkin Global LLP ("Walkin"), as a defendant.[8] Defendants explain that KWU is merely Walkin's United States payment processor—a service that Taylor provides in exchange for Walkin products.[9]

---

[3] *Id.* ¶ 19.
[4] *Id.* ¶ 20. Jackson does not directly explain that his purchase revealed Defendants' identities, but that it did is plainly inferred.
[5] *Id.* ¶¶ 37-60; *see* 47 U.S.C. § 227; 73 P.S. § 201-1.
[6] *See* Doc. 1-1.
[7] *See* Doc. 9
[8] *See id.*
[9] *Id.* at 3-5.

## II.    ANALYSIS

### A.    Standing

"[S]tanding 'consists of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations.'"[10] Article III standing is necessary to invoke the jurisdiction of a federal court and requires the plaintiff to establish: (1) that he has suffered an "injury in fact" (2) that is "fairly traceable to the challenged action of the defendant," and (3) it is likely "that the injury will be redressed by a favorable decision."[11] Given its jurisdictional nature, challenges to Article III standing are properly brought under Federal Rule of Civil Procedure 12(b)(1).[12] A defendant challenging jurisdiction under Rule 12(b)(1) may raise a facial attack, asserting that the pleadings are insufficient to establish jurisdiction, or a factual attack, in which the Court may consider evidence to determine the factual basis of its jurisdiction.[13] "The burden of establishing federal jurisdiction rests with the party asserting its existence."[14] In a facial challenge, the pleadings are viewed in the light most favorable to the plaintiff; in a

---

[10] *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990)); *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269-70 (3d Cir. 2016).
[11] *Potter*, 46 F.4th at 154 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).
[12] *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).
[13] *Lincoln v. Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).
[14] *Id.*

factual attack, the plaintiff bears the burden of proving that jurisdiction exists by a preponderance of the evidence.[15]

Prudential standing, on the other hand, derives from "judge-made doctrines . . . meant to help the courts 'avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a particular claim.'"[16] A plaintiff is likely to have prudential standing, although these considerations are not exhaustive, if: (1) he is asserting his own legal rights, rather than those of another; (2) his grievance is not abstract and generalized; and (3) his "complaint fall[s] within the zone of interests protected by the law invoked."[17] Because it is nonjurisdictional, prudential standing is analyzed under the Rule 12(b)(6) standard, which places the burden on the movant to show that the plaintiff has failed to state a claim when all well-pled allegations are accepted as true and all reasonable inferences drawn in his favor.[18]

Turning first to the threshold issue of Article III standing,[19] the Defendants primarily contend that Jackson has not alleged an injury in fact because "the only economic harm suffered" was his $140 pharmaceutical purchase which he admits

---

[15] *Id.*; *see Potter*, 46 F.4th at 154-55; *Hartig Drug*, 836 F.3d at 268.
[16] *Potter*, 46 F.4th at 154 (quoting *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010)).
[17] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)); *Lewis v. Alexander*, 685 F.3d 325, 340 (3d Cir. 2012) (citing *Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003)).
[18] *Potter*, 46 F.4th at 157.
[19] *See Hartig Drug*, 836 F.3d at 269 ("Article III standing is . . . 'a threshold issue that must be addressed before considering issues of prudential standing.'" (quoting *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 n.16 (3d Cir. 2004))).

was solely to determine the identity of the caller.[20] This argument is inadequate. The TCPA itself identifies the primary type of injury to which it is addressed: the nuisance and invasion of privacy resulting from automated or prerecorded phone calls.[21] Those privacy interests are well-rooted in the common law, and their violation is sufficient to establish an Article III injury in fact, without the need for any economic injury at all.[22]

Nevertheless, Defendants also argue that the calls did not invade Jackson's privacy because he is an attorney who litigates TCPA cases.[23] According to Defendants, given Jackson's sophistication and profession, the calls were actually a boon. They rely on *Stoops v. Wells Fargo Bank, N.A.*, a case in which the Honorable Kim R. Gibson, writing for the United States District Court for the Western District of Pennsylvania, granted summary judgment against Ms. Stoops, a TCPA plaintiff, for lack of standing.[24] *Stoops* is readily distinguishable.

Ms. Stoops was, by her own description, "doing TCPA violations as a business."[25] To generate TCPA claims, Ms. Stoops acquired nearly forty different cell phone numbers, registered their area codes in geographies where credit

---

[20] Doc. 9 at 6-7; *see* Doc. 1-1 ¶ 20.
[21] *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017).
[22] *Id.* at 351-52; *see Manual v. NRA Grp. LLC*, 772 F. App'x 141, 145-46 (3d Cir. 2018) (applying *Susinno*).
[23] Doc. 9 at 6-7.
[24] *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016).
[25] *Id.* at 798.

defaults were more likely, and monitored them for automated calls.[26] When calls came in, she documented their source and strategically requested that they stop calling as a means to access the TCPA's treble damages provision for knowing and willful violations.[27] Ms. Stoops never used any of the phone numbers to make or receive personal calls.[28] Accordingly, Judge Gibson concluded that Ms. Stoops invited the calls at issue and they were therefore not an invasion of privacy.[29]

In contrast, although Jackson may be more knowledgeable than most regarding the TCPA, there is nothing in the record to suggest that he sought out the infringing calls like Ms. Stoops. Jackson received the calls on his personal cell phone number which he had registered on the National Do-Not-Call Registry to *protect against* automated calls.[30] That is a far cry from Ms. Stoops's cell phone farm. The mere fact that Jackson may have recognized the potential for profit does not equate to an invitation-to-call.[31] Jackson has sufficiently alleged that he suffered a concrete injury for Article III standing.

---

[26] *Id.* at 799.
[27] *Id.* at 799-800.
[28] *Id.* at 799.
[29] *Id.* at 800.
[30] Doc. 1-1 ¶¶ 14, 20.
[31] *See Abante Rooter & Plumbing, Inc. v. Creditors Relief, LLC*, No. 20-CV-3272, 2020 WL 9397554, at *4 (D.N.J. Dec. 10, 2020) (holding that calls invaded a serial TCPA plaintiff's privacy and established an injury in fact for Article III standing at the motion to dismiss stage); *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-CV-4063, 2019 WL 1506378, at *4-5 (E.D. Pa. Apr. 5, 2019) (same); *Abramson v. Oasis Power LLC*, No. 18-CV-479, 2018 WL 4101857, at *4-5 (W.D. Pa. July 31, 2018) (same).

Defendants also appear to contend that Jackson lacks Article III standing because Walkin, and not KWU, is responsible for the calls.[32] In essence, they argue that Jackson is after the wrong man. Unfortunately for them, however, standing is concerned with the plaintiff, and asks "is this the right person to bring this claim. . . . It is generally not an inquiry into whether the plaintiff has got the right defendant."[33] Questions about whether the defendant is actually responsible for the harm a plaintiff claims are quintessential merits issues, and the law is clear that it is improper to turn a Rule 12(b)(1) motion into an attack on the merits.[34] To do so would unfairly "raise[] both the factual and legal burden on the plaintiff" at the pleading stage by opening the door to a pre-discovery evidentiary challenge to his claims.[35] Defendants will have sufficient opportunity to assert their wrong man defense at the merits stage of this litigation.[36] At this early point, however, their factual contentions are premature.

Finally, Defendants' prudential standing argument fails for the same reason that Jackson has sufficiently alleged an injury in fact. Relying again on *Stoops*, Defendants contend that Jackson's financial interest in litigating TCPA violations places his claims outside the zone of interests, including "privacy, peace, and

---

[32] *See* Doc. 9 at 6-7.
[33] *Davis v. Wells Fargo*, 824 F.3d 333, 346-48 (3d Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997) and *Flast v. Cohen*, 392 U.S. 83, 99 (1968)).
[34] *Id.* at 348-49.
[35] *Id.* at 349.
[36] *Id.*

quiet[,] that Congress intended to protect."[37] But, as described, there is nothing in the record to suggest that Jackson invited automated calls so as to forfeit his interest in privacy. Unlike Ms. Stoops, whose interests "include[d] purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages,"[38] Jackson attempted to protect his privacy by placing his personal cell phone number on the National Do-Not-Call Registry.[39] When that number rang with an automated call, it infringed upon his interest in privacy in exactly the way that the TCPA was intended to prevent. Thus, Jackson's claim fits comfortably within the zone of interests Congress intended to protect, and he has prudential standing.

### B. Indispensable Party

Federal Rule of Civil Procedure 19(a) requires certain parties to be joined to an action if doing so is feasible. Rule 19(b) provides that an action must sometimes be dismissed if an indispensable party cannot be joined.[40] And Rule 12(b)(7) permits a party to move for dismissal for failure to join a necessary party under Rule 19. In analyzing a Rule 12(b)(7) motion, the court asks:

---

[37] *Stoops*, 197 F. Supp. 3d at 805 (quoting *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325-26 (3d Cir. 2015)).
[38] *Id.* at 805.
[39] Doc. 1-1 ¶ 20; *see Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 564-65 (E.D. Pa. 2019) (holding that a repeat TCPA plaintiff had prudential standing because "[a]lthough Dr. Mauthe has filed other TCPA lawsuits, there is no evidence in the record to suggest that he seeks out unsolicited communications the way the *Stoops* plaintiff did.").
[40] *See generally Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 229-32 (3d Cir. 2023).

1) [c]onsidering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?; 2) If so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?; 3) If joining the party is not feasible, should the action continue in the party's absence or be dismissed?[41]

Defendants argue that Walkin is indispensable here because it is the true defendant.[42] Just as their wrong man defense was a poor fit for standing, so too is it improper as a preliminary Rule 12(b)(7) challenge. A similar argument arose in *Coloplast A/S v. Oakwell Distribution Inc.*, where the defendant, Devon Medical Products, contended that it had assigned its rights and obligations under the distribution agreement in dispute and that the assignee was therefore the proper defendant and an indispensable party.[43] The Honorable Jan Dubois, writing for the United States District Court for the Eastern District of Pennsylvania, denied Devon's Motion to Dismiss, reasoning that because the parties disputed the relationship between Devon and its supposed assignee, it would "be premature . . . to dismiss plaintiff's Complaint pursuant to Rule 12(b)(7)" before permitting discovery.[44]

Here too, the relationship between KWU and Walkin is a subject of dispute. Defendants argue that KWU is merely a trucking company, not the telemarketing

---

[41] *Id.* at 232.
[42] Doc. 9 at 9-13.
[43] *Coloplast A/S v. Oakwell Distrib. Inc.*, No. 15-CV-1592, 2015 WL 3872295, at *6 (E.D. Pa. June 23, 2015).
[44] *Id.*

mastermind, and that its only relationship to Walkin is as a U.S. payment processor.[45] Taylor claims to provide this service, through KWU, in exchange for Walkin products.[46] As evidence, Defendants provide a screenshot of webpage identifying Walkin Global Services, a screenshot of a posting for pharmaceuticals on "indiamart.com," and an email Taylor received with bank routing information for Walkin.[47] Jackson infers that KWU is behind the calling scheme because he was charged by KWU when he purchased products from the telemarketer.[48] On this record, and at this stage, considering the minimal probative value of Defendants' evidence and the reasonableness of Jackson's proffered inference, whether KWU and Taylor are responsible for the calls to Jackson remains uncertain. The Court agrees with Judge Dubois's reasoning: the parties will be permitted to conduct discovery to determine the true nature of the relationship between Defendants and Walkin.[49] Should the evidence show that Jackson is indeed after the wrong man, Defendants will be free to present their case on the merits.[50]

---

[45] Doc. 9 at 11.
[46] *Id.*
[47] Docs. 9-1, 12-1.
[48] Doc. 11 at 2-3.
[49] *Coloplast*, 2015 WL 3872295, at *6; *see Wheaton v. Diversified Energy, LLC*, No. 03-CV-105, 2003 WL 23162404, at *2-3 (E.D. Pa. Dec. 16, 2003).
[50] *See Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 159 (D. Mass. 2019) (reasoning that a "wrong defendant" argument was a merits defense, not a Rule 19 issue).

## III.  CONCLUSION

For the above-stated reasons, the Defendants' Motion to Dismiss is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge